1

2

3

4

5

6

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ISADORE HENRY, | ) | 1: 03 CV F 5255 AWI DLB P |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATIONS RE CROSS |
| v. | ) | MOTIONS FOR SUMMARY |
| | ) | JUDGMENT |
| LINDA MELCHING, et al., | ) | (Documents 74 and 84) |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

        Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action

pursuant to 42 U.S.C. section 1983.  This action is proceeding on plaintiff's first amended complaint,

filed June 12, 2003.  Now pending before the court is plaintiff's motion for partial summary

judgment filed November 5, 2004 and defendants' motion for summary judgment, filed January 28,

2005.

**I.    Procedural History**

        Plaintiff filed the original complaint in this action on February 28, 2003.  By order filed May

9. 2003, the court dismissed plaintiff's complaint, with leave to amend.  Plaintiff filed an amended

complaint on June 12, 2003 and the court found that it contained cognizable claims for violation of

the Eighth Amendment against  Alameida, Prunty, Quintero, Witcher, Hood, Branaman, Steverson,

Phair, Burgeis, Shelton, Mckillip, Rafeedie, Calderson, Sullivan, Quinones, Vasquez, and Hurdle on

September 26, 2003.  Plaintiff contends that over a period of ten years, while incarcerated at several

reason

1   institutions, defendants failed to enforce the California Department of Corrections' no-smoking

2   policies, thereby exposing plaintiff to unreasonable levels of environmental tobacco smoke ("ETS")

3   which resulted in a variety of health problems.

4          Defendants Alameida, Prunty, Quintero, Witcher, Hood, Branaman, Phair, Burgeis, Shelton,

5   Mckillip, Rafeedie, Calderson, Sullivan, Quinones, Vasquez, and Hurdle ("defendants") filed an

6   answer on December 24, 2003[1] and the court opened the discovery phase of this litigation on March

7   29, 2004.  On November 5, 2005, plaintiff filed a motion for partial summary judgment and on

8   January 28, 2005, defendants filed a motion for summary judgment.  On March 30, 2005, plaintiff

9   filed an opposition to defendants' motion for summary judgment.

10          Plaintiff moves for partial summary judgment as to defendants Alameida, McKillip, Shelton,

11   Branaman and Prunty.  Defendants move for summary judgment on the grounds that: (1) the claims

12   against defendants Prunty, Quintero, Witcher and Hood are barred by the statute of limitations; (2)

13   plaintiff failed to exhaust his administrative remedies prior to filing suit; and (3) defendants are

14   entitled to judgment as a matter of law.

15   **II.    <u>Standard for Summary Judgment</u>**

16          Summary judgment is appropriate when it is demonstrated that there exists no genuine issue

17   as to any material fact, and that the moving party is entitled to judgment as a matter of law.  Fed. R.

18   Civ. P. 56(c).  Under summary judgment practice, the moving party

19               [A]lways bears the initial responsibility of informing the district court
                 of the basis for its motion, and identifying those portions of "the
20               pleadings, depositions, answers to interrogatories, and admissions on
                 file, together with the affidavits, if any," which it believes demonstrate
21               the absence of a genuine issue of material fact.

22   <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  It is the moving party's burden to establish that

23   there exists no genuine issue of material fact and that the moving party is entitled to judgment as a

24   matter of law.  <u>British Airways Board v. Boeing Co.</u>, 585 F.2d 946, 951 (9th Cir. 1978).

25          As to plaintiff's motion for summary judgment, where the moving party has the burden of

26   

27          [1]Defendant Steverson was not served and did not file an answer.

28

1   proof, his showing must be sufficient for the court to hold that no reasonable trier of fact could find

2   other than for the moving party." Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986)

3   (emphasis in original)(quoting from Schwarzer, Summary Judgment Under the Federal Rules:

4   Defining Issues of Material Fact 99 F.R.D. 465, 487 (1984)).  Thus, on a summary judgment motion,

5   the moving party must demonstrate there is no triable issue as to the matters alleged in its own

6   pleadings.  Id.  This requires the moving party to establish beyond controversy every essential

7   element of its claim or defense.  Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986).  The

8   moving party's evidence is judged by the same standard of proof applicable at trial.  Anderson v.

9   Liberty Lobby, Inc., 477 U.S. 242 (1986).

10   As to defendants' motion for summary judgment, "where the nonmoving party will bear the

11   burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in

12   reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.

13   Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,

14   against a party who fails to make a showing sufficient to establish the existence of an element

15   essential to that party's case, and on which that party will bear the burden of proof at trial.  Id. at 322.

16   "[A] complete failure of proof concerning an essential element of the nonmoving party's case

17   necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment

18   should be granted, "so long as whatever is before the district court demonstrates that the standard for

19   entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

20   If the moving party meets its initial responsibility, the burden then shifts to the opposing

21   party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

22   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence

23   of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is

24   required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

25   material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586

26   n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that

27   might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477

28

1  U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630

2  (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

3  return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436

4  (9th Cir. 1987).

5       In the endeavor to establish the existence of a factual dispute, the opposing party need not

6  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

7  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

8  trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the

9  pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"

10  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963

11  amendments).

12       In resolving the summary judgment motion, the court examines the pleadings, depositions,

13  answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c).

14  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable

15  inferences that may be drawn from the facts placed before the court must be drawn in favor of the

16  opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655

17  (1962)(per curiam).  Nevertheless, inferences are not drawn out of the air, and it is the opposing

18  party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v.

19  Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th

20  Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

21  show that there is some metaphysical doubt as to the material facts.  Where the record taken as a

22  whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue

23  for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

24  **III.    Undisputed Facts**

25       **A.    Parties**

26       1.    At times material to the matters at issue, plaintiff, Isadore Henry (J-60688), was in the

27            lawful custody of the California Department of Corrections following his conviction

28

1    for 5 counts of second degree robbery, and 21 counts of first degree robbery, plus

2    enhancements.

3    2.   Since his incarceration began in 1995, plaintiff has been housed at Calipatria State

4         Prison (CAL); California State Prison, Los Angeles (LAC); California State Prison,

5         Solano (CSP SOL); and California Correctional Institution (CCI).

6    3.   Edward Alameida was the Director of the California Department of Corrections

7         (CDC) at times material to the mattes at issue.

8    4.   K.W. Prunty was the Warden at CAL at times material to the matters at issue.

9    5.   L. Hood was an Associate Warden; Mark Witcher was a Facility Captain; and

10        Herman Quintero was a facility sergeant at LAC at times material to the matters at

11        issue.

12   6.   P.Branaman was Prison Industries Authority (PIA) Supervisor at CSP SOL at times

13        material to the matters at issue.

14   7.   A. Calderon was Warden; J. Sullivan was Chief Deputy Warden; P.L. Vasquez was

15        Associate Warden; E. Shelton was PIA Supervisor; C. McKillip was PIA Manager; G.

16        Rafeedie was PIA Administrator; and S.Phair and R. Burgeis were Correctional

17        Officers at CCI at time material to the matters at issue.

18   8.   K. Hurdle was an Ombudsman for CDC at times material to the matters at issue.

19   **B.    Smoking Policy**

20   9.   On February 19, 1003, Governor Pete Wilson signed Executive Order W-42-93,

21        banning smoking inside all state-owned or state-leased buildings, as well as in all

22        state prisons and hospitals.

23   10.  As a result of the Governor's Executive Order, CDC implemented a policy that

24        prohibited inmates from smoking within any of the buildings, or within five feet of

25        any entrance/exit to a building.

26   11.  No smoking signs are clearly posted in all areas where smoking is prohibited.

27   12.  Inmates caught violating the non-smoking policy are subject to progressive discipline,

28

1    including verbal counseling and written disciplinary chronos or rules violation

2    reports.

3    13.    On June 24, 1998, Governor Pete Wilson signed Executive Order W-180-98, banning

4    tobacco products for inmates in the buildings and on the grounds of any CDC

5    Reception Center and the California Rehabilitation Center (CRC), except that the use

6    of tobacco products may be allowed by CDC for use in approved inmate religious

7    ceremonies.  The Executive Order also provided that CDC consider voluntary smoke-

8    free facilities for staff and inmates.

9    14.    Inmates sometimes violate the no-smoking policy.

10   **C.    Medical Records**

11   15.    On May 15, 1995, Henry arrived at Wasco State Prison (WAS).  Upon arrival at the

12   reception center, Henry received a physical examination.  The health screening sheet

13   for new commitment inmates shows that Henry had no known allergies to

14   medications.

15   16.    Henry arrived at CAL on June 22, 1995, and was housed there until September 4,

16   1997.

17   17.    The CAL new arrival intake sheet, filled out by Medical Technical Assistant (MTA)

18   Bally on June 23, 1995, indicates that Henry has no known allergies.

19   18.    On May 1, 1996, Henry complained of sneezing and a runny nose due to allergies.  A

20   wool patch test was done and he was found to be allergic to wool.

21   19.    On May 27, 1997, a notation was made regarding plaintiff's needed housing with a

22   non-smoking inmate.

23   20.    A medical chrono dated June 29, 1997, states that plaintiff is allergic to cigarette

24   smoke.  The chrono states that Henry is to be housed with a non-smoking cellmate

25   due to medical problems.  A September 4, 1997 notation at LAC references plaintiff's

26   severe allergy to cigarette smoke since childhood and instructs plaintiff to be housed

27   with a non-smoker.

28

21.    After he was transferred to CCI, on March 20, 2001, plaintiff was issued another chrono stating he was to be placed in a no smoking cell for the duration of his incarceration at that institution.  Plaintiff initially complained of an allergy to second hand smoke.  The medical records from CCI reveal instances where Henry suffered from congestion and shortness of breath due to exposure to second hand tobacco smoke.  He was diagnosed with asthma and allergic rhinitis and treated with inhalers.

**D.    Exhaustion of Administrative Remedies.**

22.    On September 10, 1998, Henry filed his first administrative grievance regarding his exposure to second hand tobacco smoke.  He alleged he was "extremely allergic to cigarette smoke! As a child I suffered greatly with excessive sneezing, stomach strains, and dizziness caused by cigarette smoke and the smell of it."  Henry acknowledged that CDC had a no-smoking policy, but claimed that "many inmates have chosen to ignore the policies."  He did not state that any of the named defendants were failing to enforce those policies.  Henry requested that he be issued a chrono stating that he "has a severe chronic medical condition of allergy caused by cigarettes which dictates that he always be housed in a non-smoking environment or with a non-smoker for the duration of imprisonment."

23.    Henry's appeal was denied at the first level of review.  The response noted that Henry had been interviewed by Sergeant Quintero and provided with an opportunity to present any supporting evidence.  Henry was informed that in order to obtain a medical chrono, he would have to pursue the issue with the medical department.  His request for a non-smoking cell partner was denied on the ground that state policy prohibited smoking in the cells, and therefore, it was not necessary to house him with a non-smoker.  The response was signed by M. Witcher, Facility Captain, and L. Hood, Associate Warden.

24.    Henry appealed to the second level of review, claiming that Sergeant Quintero had only provided an opportunity to present his verbal account of the situation, but no

1    supporting documentation.  Henry claimed that the no-smoking policy was not being

2    enforced, but failed to name any staff member failing to enforce the no-smoking

3    policies.

4    25.    The appeal was denied at the second level of review by Chief Deputy Warden

5    Yarborough.  The response noted that Henry had been granted a second interview

6    with Lieutenant Beltran, but he did not provide any additional information.  With

7    regard to obtaining a medical chrono, Henry was advised that, based on information

8    provided by MTA Wimbish, the medical department did not issue chronos prohibiting

9    inmates from being housed with inmates who smoke because all state buildings were

10    non-smoking buildings.  Henry was also advised that inmates caught violating the no-

11    smoking policy would be subject to disciplinary action.

12    26.    Henry appealed to the Director's level of review, which was denied on April 23,

13    1999.

14    27.    On July 30, 2001, Henry filed a grievance claiming that on July 2, 2001, while

15    working in the PIA factory, he was exposed to "an excessive amount of second-hand

16    tobacco smoke" and suffered "complications in breathing."  He alleged that he

17    complained to his supervisor, Ms, Shelton, who stated, "You should have brought

18    your inhaler.  You know you work in the industries.  I don't want to hear anymore.

19    Go back to your dorm and get well.  Put in a sick call slip for tomorrow and don't

20    come back until next Monday!"  Henry also complained that Ms. Shelton did not

21    enforce the smoking regulations, causing his exposure to second-hand smoke, both in

22    the restroom and outdoors.  Henry requested that his allegations be investigated, that

23    surveillance cameras be installed, and that no retaliatory actions be taken against him.

24    28.    A review of Henry's medical file shows that, on July 2, 2001, he was sent to the

25    medical clinic due to difficulty breathing, and also complaining of a stiff neck.  The

26    doctor noted that Henry was unable to put his chin to his chest, but his chest was

27    clear.  He was given a Beclomethasone Inhaler and told to inhale two puffs twice a

28

day.

29.    Charles McKillip, the PIA manager, compiled documents showing that several inmates had been written disciplinary chronos for violating smoking policy. He also gathered documents showing the inmates were routinely told of the no-smoking policy.

30.    On August 24, 2001, a second level appeal response was issued. The response, signed by G.A. Rafeedie and J. Sullivan, stated that new "no smoking" signs and a memorandum reiterating CDC's no-smoking policy had been posted. The response also noted Henry's confirmation that the no smoking policy was being mentioned at every meeting that staff conducted with the inmates.

31.    Dissatisfied with the response, Henry appealed to the Director's level, now claiming that CDC had a "policy and custom" causing damage to the human body. He also claimed that tobacco is addictive and therefore, smoking inmates were irresponsible about where they smoked, and reiterated staff's inability to enforce the smoking policy.

32.    A response was issued on March 4, 2002, granting in part and denying in part, Henry's appeal. The response noted that Henry's allegations had been investigated and determined to be unfounded.

33.    On August 23, 2001, Henry filed a grievance alleging that CDC had a "policy and custom" for the distribution and sale of tobacco products to inmates, and that the State of California was engaging in the selling of a harmful product. Henry requested that all tobacco products be banned from CCI and that department employees be prohibited form supplying prisoners with tobacco products.

34.    The first level appeal response, signed by defendants Canaday and Quinones, stated that the reviewers agreed with Henry's contention and would like CCI to be designated a non-smoking facility, however, such action was not within the scope of the first level appeal process.

35.     Henry appealed to the second level, claiming that second hand tobacco smoke existed on a daily basis in the Dorm 4 housing unit, causing him to suffer. Henry requested that a non-smoking dormitory be established. He did not note any specific date or time, or that he required medical attention due to his exposure.

36.     The appeal was partially granted at the second level of review. Signed by P. Vasquez and W. Sullivan, the appeal denied Henry's requests that all tobacco products be banned from CCI and that officials establish a dormitory where tobacco products were banned. The denial reiterated CDC's policy that no smoking is allowed within five feet of any entrance or exit nor within the interior of the building.

37.     Dissatisfied, Henry appealed to the Director's level. The appeal was denied at the Director's level on March 22, 2002.

**IV.     Cross Motions for Summary Judgment**

    **A.     Exhaustion**

Defendants argue that plaintiff's claims against defendants Alameida, Prunty, Quintero, Witcher, Hood, Branaman, Phair, McKillip, Rafeedie, Vasquez, Hurdle, Calderone, Sullivan and Quinones should be dismissed because he failed to exhaust his administrative remedies with regard to any claims against these defendants. The Court construes defendants' motion for summary judgment on this issue as an unenumerated Rule 12(b) motion.[2]

The Court has reviewed the inmate appeals filed by plaintiff which defendants submit in connection with their motion for summary judgment. On September 10, 1998, plaintiff filed a grievance regarding his exposure to second hand smoke at California State Prison Los Angeles ("LAC"). The appeal was denied at the first level of review and the Director's level of review. The

_____

[2]In Wyatt v. Terhune, 305 F.3d 1033 (9th Cir. 2002), the Court held that exhaustion is an affirmative defense rather than a pleading requirement, and "defendants have the burden of rasing and proving the absence of exhaustion." Wyatt, 280 F.3d at 1044. The Court stated that "the failure to exhaust nonjudicial remedies is subject to an unenumerated Rule 12(b) motion rather than a motion for summary judgment," because "'[s]ummary judgment is on the merits whereas dismissal of an action on the ground of failure to exhaust administrative remedies is not on the merits.'" Wyatt, 280 F.3d at 1044-45, quoting Heath v. Cleary, 708 F.2d 1376, 1380 n.4 (9th Cir. 1983).

appeal was denied at the Director's level on April 23, 1999.  The Court finds that this appeal grieves the facts at issue in plaintiff's claim against defendants Quintero, the Facility Sergeant; defendant Witcher, the Facility Captain and defendant Hood, Associate Warden at LAC.  Satisfaction of the exhaustion requirement does not require that inmates draft grievances with the precision of an attorney, laying out every fact, identifying every defendant by name, and identifying which constitutional rights were violated by which actions or omissions.  Satisfaction of the exhaustion requirement requires that inmates, in their grievances, place prison personnel on fair notice as to the events that subsequently give rise to suit.  Appeal No 98-1422 meets this standard with regard to defendants Quintero, Witcher and Hood.

On July 30, 2001, plaintiff filed appeal No. 01-2170 regarding his exposure to an "an excessive amount of second-hand tobacco smoke" and "complications in breathing" at California Correctional Institution ("CCI").  He complained that his supervisor, defendant Shelton was intolerant of his complaints but told him to leave the area and seek medical treatment.  Plaintiff also complained that Shelton did not enforce the smoking regulations, causing his exposure to second-hand smoke, both in the restroom and outdoors.  The appeal was denied.  On August 24, 2001, a second level appeal response was issued stating that new "no smoking" signs and a memorandum reiterating CDC's no smoking policy had been posted.  Dissatisfied with the response, plaintiff appealed to the Director's level claiming that CDC's had a policy and custom which was causing damage to the human body.  A response was issued on March 4, 2002, granting in part the appeal.

Under the foregoing standard, Appeal No. 01-2170 grieves the facts at issue in plaintiff's claims against defendant Alameida and the CCI defendants including, Phair, Burgeis, Shelton, McKillip, Rafeedie, Calderon, Sullivan, Quinones, Hurdle and Vasquez.  The appeal places these defendants on notice as to the events giving rise to his claims.

On August 23, 2001, plaintiff filed a grievance alleging that CDC had a "policy and custom" for the distribution and the sale of tobacco products to inmates, and that the State of California was engaging in the selling of a harmful products.  He requested all tobacco products be banned from CCI and that department employees be prohibited from supplying prisoners with tobacco products.

The first level response stated that the reviewers agreed with plaintiff and would like CCI to be designated a non-smoking facility, however, such action was not within the scope of the first level appeal process.  Plaintiff appealed to the second level claiming that second hand smoke existed on a daily basis in the Dorm 4 housing unit, causing him to suffer.  The appeal was partially granted at the second level.  Dissatisfied, plaintiff appealed to the Director's level which was denied on March 22, 2002.  This appeal also grieves the facts alleged in plaintiff's claims against the CCI defendants listed above and plaintiff's claims against defendant Alameida as the director of CDC.

Based on the foregoing, plaintiff has exhausted his administrative remedies against all defendants except, defendants Prunty, the Warden at Calipatria State Prison, and defendant Branaman, the PIA Supervisor at California State Prison Solano.  The Court recommends that these defendants be dismissed from this action on this basis and that plaintiff's motion for partial summary judgment as to defendants Prunty and Branaman be denied.

**B.     Statute of Limitations**

Defendants also claim that plaintiff's claims against defendants Prunty, Quintero, Witcher and Hood are barred by the statute of limitations and therefore must be dismissed.  The Court finds that plaintiff failed to exhaust his administrative remedies against defendant Prunty and therefore will not address the statute of limitations issue regarding this defendant.  See Perez v. Wisconsin Dep't of Corr., 182 F.2d 532, 534 (7th Cir. 1999) (vacating judgment and remanding with instructions to dismiss for failure to exhaust in case where district court granted summary judgment to defendants on the merits and did not rule on their pending motion for dismissal based on failure to exhaust).

Plaintiff asserts that he filed a grievance in 1998 regarding his exposure to ETS but defendants Quintero, Witcher and Hood failed to properly respond.  Defendants argue that since plaintiff did not file his complaint until February 28, 2003, his claims against these defendants are barred.  Plaintiff argues that was not required to file his complaint in 1998 because he was relying on defendants to enforce the no smoking policy and at that time he did not have reason to know of his injuries.  He argues his claims did not accrue until February 2003 after it became clear that

defendants were not going to address the problem.

Federal law determines when a civil rights claim accrues.  See Elliott v. City of Union City, 25 F.3d 800, 801-802 (9th Cir. 1994).  Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.  Kimes v. Stone, 84 F.3d 1121, 1128 (9th Cir.1996).  Because section 1983 contains no specific statute of limitations, federal courts should borrow state statues of limitations for personal injury actions in section 1983 suits.  See Wilson v. Garcia, 471 U.S. 261, 276 (1985); Torres v. City of Santa Ana, 108 F.3d 224, 226 (9th Cir. 1997); Vaughan v. Grijalva, 927 F.2d 476, 478 (9th Cir. 1991).  At the time plaintiff's claim accrued, the applicable statute of limitations in California for section 1983 claims was one year.  Cal. Civ. Proc. Code § 340(3); Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004) (Cal. Civ. Proc. § 335.1, extending the statute of limitations from one year to two years, does not apply to claims that accrued prior to January 1, 2003).

In actions where the federal court borrows the state statute of limitation, the court should also borrow all applicable provisions for tolling the limitations period found in state law.  See Hardin v. Straub, 490 U.S. 536, 539 (1989).  Pursuant to the California Code of Civil Procedure section 352.1, a two-year limit on tolling is imposed on prisoners.  Section 352.1 provides, in pertinent part, as follows:

(a) If a person entitled to bring an action, mentioned in Chapter 3  (commencing with Section 335), is, at the time the cause of action accrued, imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a term less than for life, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years.

Therefore, plaintiff had three years from the date that the cause of action accrued in which to file suit.

Plaintiff appears to argue that his claims were equitably tolled.  "The doctrine of equitable tolling focuses on the effect of the prior claim in warning the defendants in the subsequent claim of the need to prepare a defense."  Cervantes v. City of San Diego, 5 F.3d 1273, 1275 (9th Cir. 1993).

The rules for equitable tolling are borrowed from the forum state.  <u>Cervantes</u>, 5 F.3d at 1275.

"Under California law, a plaintiff must meet three conditions to equitably toll a statute of limitations:

'(1) defendant must have had timely notice of the claim; (2) defendant must not be prejudiced by

being required to defend the otherwise barred claim; and (3) plaintiff's conduct must have been

reasonable and in good faith.'"  <u>Fink v. Shedler</u>, 192 F.3d 911, 916 (9th Cir. 1999) (quoting <u>Bacon v.

City of Los Angeles</u>, 843 F.2d 372, 374 (9th Cir. 1988)).

A limitations period may be tolled while a claimant pursues an administrative remedy.  <u>See,

Daviton v. Columbia</u>, 241 F.3d 1131 (9th Cir. 2001).  In California, pursuing administrative remedies

tolls the statute of limitations even where exhaustion of administrative remedies is not required prior

to bringing suit.  <u>See</u> <u>Addison v. State of California</u>, 21 Cal. 3d 313, 317 (1978).

Here, even assuming that plaintiff's claims were tolled against defendants Quintero, Witcher

and Hood while he pursued administrative remedies, the claims are barred.  He filed an inmate

grievance on September 10, 1998 regarding his exposure to second hand smoke at LAC.  His appeal

was denied at the Director's level on April 23, 1999.  Therefore, plaintiff had until April 23, 2002 in

which to file his claims against the LAC defendants Quintero, Witcher and Hood and his complaint

filed on February 23, 2003 is untimely.  The Court therefore recommends that defendants motion for

summary judgment as to defendants Quintero, Witcher and Hood be granted.

**C.      Plaintiff's Eighth Amendment Claim.**

Defendants argue that plaintiff's claim for damages and injunctive relief must fail because

plaintiff cannot show exposure to an unreasonable amount of second hand smoke and he cannot

establish an unreasonable risk of serious harm to his future health.  As discussed above, plaintiff

failed to exhaust his administrative remedies against defendants Prunty (Calipatria State Prison) and

defendant Branaman (California State Prison Solano); and plaintiff's claims are barred against

defendants Quintero, Witcher and Hood (California State Prison, Los Angeles).  Accordingly,

plaintiff's only remaining Eighth Amendment Claims are against defendant Alameida (Director of

CDC) and the defendants at CCI (Phair, Burgess, Shelton, McKillip, Rafeedie, Calderson, Sullivan,

Quinones, Vasquez and Hurdle).

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, (9th Cir. 1998) (citing Farmer v. Brennan, 511 U.S. 825, 835 (1994). The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837. Thus, "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. at 835. Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. Id. at 844-45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Farmer v. Brennan, 511 U.S. at 835; Frost v. Agnose, 152 F.3d at 1128; see also Daniels v. Williams, 474 U.S. 327, 33 (1986).

Exposure to levels of ETS that pose an unreasonable risk of serious damage to a prisoner's future health may state a cause of action under the Eighth Amendment where prison officials acted with deliberate indifference. Helling v. McKinney, 509 U.S. 25, 35 (1993). The objective factor requires that the prisoner "show that he himself is being exposed to unreasonably high levels of ETS" and that the "risk of which he complains is not one that today's society chooses to tolerate." Helling, 509 U.S. at 35-6. The subjective factor requires that the prisoner demonstrate that prison officials acted with deliberate indifference in exposing him to ETS. Id.

### 1.     Objective Element

Defendants argue that plaintiff cannot establish the objective factor in that he cannot demonstrate that he was exposed to unreasonably high levels of ETS because State law and Department of Corrections policies prohibit inmate smoking in all housing areas.  No smoking is allowed inside of the buildings and no person is allowed to smoke within five feet of any entrance to a building.  CDC has also adopted a progressive disciplinary program for those individuals caught violating the smoking policy.  Defendants argue that given the enforcement of this aggressive anti-smoking policy, plaintiff has not and cannot establish deliberate indifference.  *See* <u>Helling</u>, 509 U.S. at 36 [given enforcement of anti-smoking policy, establishing deliberate indifference could be very difficult].

It is undisputed that plaintiff suffers from asthma and allergies that are exacerbated by exposure to second hand smoke.  Plaintiff asserts that the exposure to ETS has resulted in a variety of health problems including "years of excessive sneezing, headaches, wheezing, nose bleeds, dizziness, eye irritation, nausea and on February 25, 2005, a bilateral inguinal hernia repair surgery arising from all the excessive sneezing."  Plaintiff does not dispute that the non-smoking policy policies exist or that inmates are aware of them.  Rather he alleges that despite these measures, inmates violate the policy on a daily basis.  He alleges that contrary to defendants' statements, the presence of smoke in the buildings is excessive, heavy and pervasive in most areas.  Plaintiff's response to Defendants' Statement of Undisputed Facts No. 13.  He states that the windows in the dormitory, dayroom and bathroom are often closed, especially in the winter.  <u>Id</u>.  In addition to his own declaration, plaintiff provides declarations from other inmates at CCI attesting to the high level of smoke in the dorm and bathroom.

There exists a genuine issue of material fact regarding the level of exposure to ETS to which plaintiff was subjected at CCI.   Therefore, summary judgment is inappropriate as to the objective prong of the Eighth Amendment analysis.  Defendants concede that Plaintiff suffers from a preexisting condition that makes him unusually susceptible to ETS.  Thus, his exposure to such smoke may well have been cruel and unusual punishment depending on the level of exposure.

1   Defendants dispute and plaintiff contends that despite the policy, he is subjected to excessive levels
2   of ETS while in his dorm, bathroom and work area.

3   **B.      Subjective Element**

4        When a prisoner alleges inhumane conditions of confinement under the Eighth Amendment,
5   the prisoner must show proof that each defendant acted with deliberate indifference.  The prison
6   official must "know of and disregard an excessive risk to inmate health or safety."  "  Farmer v.
7   Brennan, 511 U.S. at 837 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Thus, "a prison
8   official may be held liable under the Eighth Amendment for denying humane conditions of
9   confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by
10  failing to take reasonable measures to abate it."  Farmer v. Brennan, 511 U.S. at 835.  Prison officials
11  may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting
12  evidence of a reasonable, albeit unsuccessful, response to the risk.  Id. at 844-45.

13       Defendants assert that there is an absence of evidence of deliberate indifference in that there
14  is no evidence that any of the defendants acted with a culpable state of mind.  Defendants contend
15  that plaintiff's grievances failed to alert prison officials that he was being exposed to unreasonable
16  levels of second hand smoke.  As noted, the Court need only address the Eighth Amendment claim
17  as to the CCI defendants and defendant Alameida.

18       **Defendant Phair**.  Plaintiff alleges that on March 5, 2001, while in his assigned bunk, he
19  became engulfed and subject to an excessive amount of smoke.  Amended Complaint at p. 6.  He
20  alleges that he informed defendant Phair, who appropriately sent plaintiff to the medical clinic.  Id.
21  He alleges however that defendant Phair was irresponsible by "not walking through the dorm area in
22  the frequent manner required by their post orders."  Id.  Plaintiff has failed to demonstrate a genuine
23  issue for trial as to the subjective element of his Eighth Amendment claim against defendant Phair.
24  The undisputed evidence shows that there was a prison policy prohibiting smoking inside the
25  buildings.  There is no evidence that defendant Phair failed to enforce this policy nor that he knew of
26  plaintiff's condition.  Further, plaintiff agrees that when he informed Phair of his condition, he
27  appropriately sent plaintiff to the medical clinic.

28

**Defendants Burgeis and Shelton.**  Plaintiff alleges that both of these defendants ignored the no-smoking policy and allowed inmates to smoke in plaintiff's presence.  Amended Complaint at p. 7-8.  Plaintiff alleges that he specifically requested defendant Burgess' help but he continued to ignore the smoking in the bathroom area.  Amended Complaint at p. 7.  Plaintiff alleges that during several months of working at the PIA factory, he was subjected to high levels of smoke of which defendant Shelton was aware but she allowed smoking and often would smoke with the inmates.  Id.  Plaintiff alleges that on July 2, 2001 he suffered breathing complications and when he told Shelton, she responded, "You should have brought your inhaler.  You know you work in industries.  I don't want to hear it anymore.  Go back to your dorm and get well.  Put in a sick call slip for tomorrow and don't come back until next Monday.  Now leave!"  There are genuine issues of material fact with regard to the subjective element of plaintiff's Eighth Amendment claims against defendants Burgess and Shelton.  Despite the no-smoking policy, there is evidence that these defendants failed to enforce the policy despite knowledge of the risk to plaintiff.

**Defendants McKillip, Rafeedie and Sullivan**.  Plaintiff alleges that defendant McKillip, the PIA Manager interviewed him on August 28, 2001 regarding his appeal and informed plaintiff that his appeal was granted in part in that new "No Smoking" signs would be posted.  Amended Complaint p. 8.  He alleges that defendants Rafeedie and Sullivan signed off on the appeal despite being aware of staff's inability to control smoking inside the buildings.  Amended Complaint p. 9.  As with defendant Phair, there is no evidence that these defendants failed to enforce the no smoking policy or that they knew of and disregarded a substantial risk of harm to plaintiff.  Assuming they were aware of inmates' smoking and plaintiff's health condition, there no evidence that they ignored these issues.  It is undisputed that they responded by posting new "No Smoking" signs and posting a memo reiterating the no smoking policy.  That the signs "did nothing to stop the smoking or protect plaintiff's health" as plaintiff alleges, does not establish that defendants were deliberately indifferent to plaintiff's condition.  Moreover, the involvement of the defendants reviewing and handling plaintiff's appeal, without more, is not cognizable as a constitutional violation.  See Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993)[prison official's involvement and actions in reviewing

prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action.]

**Defendants Quinones and Vasquez.**  Plaintiff alleges that defendants Quinones and Vasquez denied plaintiff's appeal filed on August 23, 2001 in which he requested that all tobacco products be banned from CCI and that CCI establish a dorm where tobacco products are prohibited. Amended Complaint p. 9-10.  Plaintiff alleges that these defendants were aware of staff's inability to control smoking within the buildings and had the power to make sure their staff enforced the policy but nevertheless denied the appeal.  Id.  Plaintiff fails to present evidence that these defendants specifically failed to enforce the policy despite knowledge of a substantial risk of harm to plaintiff. Indeed, plaintiff on November 16, 2001, defendant Quinones authored a memorandum to inmates reiterating the no smoking policy and stating that further measures to enforce the policy would be taken (Dayroom and TV room closures) would be taken to ensure that smoking within the housing units would cease immediately.  Amended Complaint, Exhibit E.  Plaintiff has failed to meet his burden of showing a genuine issue for trial as to these defendants.

**Defendant Hurdle**.  Plaintiff alleges that defendant Hurdle failed to investigate the failure of staff to enforce the no smoking policies despite plaintiff's detailed letter of complaint.  Amended Complaint, p. 10.  Plaintiff has offered no evidence of specific conduct on the part of defendant Hurdle other than a response to his letter in which defendant Hurdle confirms that enforcement of the no smoking rule is a priority at CCI and explains that if CCI were to create a smoke free dormitory, they would be endorsing smoking in existing dormitories.  Amended Complaint, Exhibit E. Summary judgment is appropriate as to defendant Hurdle for the reasons explained above.

**Defendant Alameida**.

Plaintiff alleges that as the Director of the Department of Corrections, defendant Alameida had the authority to enforce and/or augment state policy regarding smoking in state buildings. Amended Complaint, p. 3.  He alleges that Alameida participated in the violation of plaintiff's rights by ignoring his appeals regarding exposure to ETS.  Plaintiff fails to identify any evidence demonstrating that defendant Alameida was deliberately indifferent to plaintiff's alleged exposure to ETS.  The only evidence before the Court demonstrates that CDC had a policy that prohibited

1   smoking inside the buildings and violations of the policy were enforced through the disciplinary

2   process.  There is no evidence that Alameida, with knowledge of the potential harm to plaintiff,

3   failed to enforce the policy or in any way ignored the risk to plaintiff.  That Alameida had knowledge

4   that  inmates sometimes violate the policy does not establish deliberate indifference.

5          In summary, defendants contend there is no evidence to support plaintiff's Eighth

6   Amendment claims.  There is a genuine issue for trial as to the objective element of plaintiff's

7   Eighth Amendment claims, namely whether he was exposed to unreasonably high levels of  ETS.

8   However, plaintiff has failed to meet his burden to show that there is a genuine of issue for trial as to

9   the subjective element as to defendants Phair, McKillip, Rafeedie, Sullivan, Vasquez, Hurdle and

10   Alameida.  Plaintiff has demonstrated that there is a genuine issue for trial as to defendants Burgess

11   and Shelton in that he has come forward with evidence that these defendants knew of plaintiff's

12   health condition and nevertheless failed to enforce the no smoking policy.

**V.      Conclusion**

13          Based on the foregoing, the Court HEREBY RECOMMENDS that defendants motion for

14   summary judgment be GRANTED as to defendants Alameida, Prunty, Quintero, Witcher, Phair,

15   Hood, Branaman, McKillip, Rafeedie, Calderon, Sullivan, Quinones, Vasquez and Hurdle.  The

16   Court RECOMMENDS that defendants' motion for summary judgment as to defendants Burgeis and

17   Shelton be DENIED and that plaintiff's motion for summary judgment be DENIED.  The case

18   should proceed on plaintiff's Eighth Amendment claim against defendants Burgeis and Shelton only.

19          These findings and recommendations will be submitted to the United States District Judge

20   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30)

21   days after being served with these findings and recommendations, the parties may file written

22   ///

23   ///

24   ///

25   ///

26   ///

27

28

objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


        IT IS SO ORDERED.

**Dated:    July 26, 2005**                    _____/s/ Dennis L. Beck_____
3b142a                                         UNITED STATES MAGISTRATE JUDGE